# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| SPECIALTY RETAIL SHOPS HOLDING CORP., *et al.*,[1] | ) | Case No. 19-80064 (TLS) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

## SCHEDULE OF ASSETS AND LIABILITIES FOR
## PENN-DANIELS, LLC (CASE NO. 19-80066)

---

[1]   The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Specialty Retail Shops Holding Corp. (0029); Pamida Stores Operating Co., LLC (6157); Pamida Transportation, LLC (4219); Penn-Daniels, LLC (0040); Place's Associates' Expansion, LLC (7526); Retained R/E SPE, LLC (6679); Shopko Finance, LLC (1152); Shopko Gift Card Co., LLC (2161); ShopKo Holding Company, LLC (0171); ShopKo Institutional Care Services Co., LLC (7112); ShopKo Optical Manufacturing, LLC (6346); ShopKo Properties, LLC (0865); ShopKo Stores Operating Co., LLC (6109); SVS Trucking, LLC (0592).  The location of the Debtors' service address is: 700 Pilgrim Way, Green Bay, Wisconsin 54304.

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF NEBRASKA**

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| SPECIALTY RETAIL SHOPS HOLDING CORP., *et al.*, | ) Case No. 19-80064-TLS |
| | ) |
| Debtors. | ) (Jointly Administered) |
| | ) |

**GLOBAL NOTES AND**
**STATEMENT OF LIMITATIONS, METHODOLOGY,**
**AND DISCLAIMERS REGARDING THE DEBTORS' SCHEDULES**
**OF ASSETS AND LIABILITIES AND STATEMENTS OF FINANCIAL AFFAIRS**

Specialty Retail Shops Holding Corp. and certain of its affiliates, as debtors and debtors in possession in the above-captioned chapter 11 cases, (the "Debtors") have filed their respective Schedules of Assets and Liabilities (the "Schedules") and Statements of Financial Affairs (the "Statements") in the United States Bankruptcy Court for the District of Nebraska (the "Bankruptcy Court").  The Debtors, with the assistance of their legal and financial advisors, prepared the Schedules and Statements in accordance with section 521 of chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") and Rule 1007 of the Federal Rules of Bankruptcy Procedure.

Russell L. Steinhorst has signed each set of the Schedules and Statements.  Mr. Steinhorst serves as the Chief Executive Officer at Debtor Specialty Retail Shops Holding Corp., and he is an authorized signatory for each of the Debtors.  In reviewing and signing the Schedules and Statements, Mr. Steinhorst has necessarily relied upon the efforts, statements, advice, and representations of personnel of the Debtors and the Debtors' legal and financial advisors.  Given the scale of the Debtors' business and the hundreds of stores covered by the Schedules and Statements, Mr. Steinhorst has not (and could not have) personally verified the accuracy of each such statement and representation, including statements and representations concerning amounts owed to creditors.

In preparing the Schedules and Statements, the Debtors relied on financial data derived from their books and records that was available at the time of such preparation.  Although the Debtors have made every reasonable effort to ensure the accuracy and completeness of the Schedules and Statements, subsequent information or discovery may result in material changes to the Schedules and Statements.  As a result, inadvertent errors or omissions may exist.  For the avoidance of doubt, the Debtors hereby reserve their rights to amend and supplement the Schedules and Statements as may be necessary or appropriate.

The Debtors and their agents, attorneys, and financial advisors do not guarantee or warrant the accuracy or completeness of the data that is provided herein, and shall not be liable for any loss or injury arising out of or caused in whole or in part by the acts, errors, or omissions, whether negligent or otherwise, in procuring, compiling, collecting, interpreting, reporting,

communicating, or delivering the information contained herein. While commercially reasonable efforts have been made to provide accurate and complete information herein, inadvertent errors or omissions may exist. The Debtors and their agents, attorneys, and financial advisors expressly do not undertake any obligation to update, modify, revise, or re-categorize the information provided herein, or to notify any third party should the information be updated, modified, revised, or re-categorized, except as required by applicable law. In no event shall the Debtors or their agents, attorneys, and financial advisors be liable to any third party for any direct, indirect, incidental, consequential, or special damages (including, but not limited to, damages arising from the disallowance of a potential claim against the Debtors or damages to business reputation, lost business, or lost profits), whether foreseeable or not and however caused, even if the Debtors or their agents, attorneys, and financial advisors are advised of the possibility of such damages.

## Global Notes and Overview of Methodology

1. **Description of Cases.** On January 16, 2019, (the "Petition Date"), each of the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code. The Debtors are operating their businesses and managing their property as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. On January 16, 2019, an order was entered directing procedural consolidation and joint administration of these chapter 11 cases [Docket No. 25]. Notwithstanding the joint administration of the Debtors' cases for procedural purposes, each Debtor has filed its own Schedules and Statements. The information provided herein, except as otherwise noted, is reported as of the close of business on the Petition Date.

2. **Global Notes Control.** These Global Notes pertain to and comprise an integral part of each of the Debtors' Schedules and Statements and should be referenced in connection with any review thereof. In the event that the Schedules and Statements conflict these Global Notes, these Global Notes shall control.

3. **Reservations and Limitations.** Reasonable efforts have been made to prepare and file complete and accurate Schedules and Statements; however, as noted above, inadvertent errors or omissions may exist. The Debtors reserve all rights to amend and supplement the Schedules and Statements as may be necessary or appropriate. Nothing contained in the Schedules and Statements constitutes a waiver of any of the Debtors' rights or an admission of any kind with respect to these chapter 11 cases, including, but not limited to, any rights or claims of the Debtors against any third party or issues involving substantive consolidation, equitable subordination, or defenses or causes of action arising under the provisions of chapter 5 of the Bankruptcy Code or any other relevant applicable bankruptcy or non-bankruptcy laws to recover assets or avoid transfers. Any specific reservation of rights contained elsewhere in the Global Notes does not limit in any respect the general reservation of rights contained in this paragraph.

   (a) **No Admission.** Nothing contained in the Schedules and Statements is intended or should be construed as an admission or stipulation of the validity of any claim against the Debtors, any assertion made therein or herein, or a waiver of the Debtors' rights to dispute any claim or assert any cause of action or defense against any party.

(b) **Recharacterization.** Notwithstanding that the Debtors have made reasonable efforts to correctly characterize, classify, categorize, or designate certain claims, assets, executory contracts, unexpired leases, and other items reported in the Schedules and Statements, the Debtors nonetheless may have improperly characterized, classified, categorized, or designated certain items. The Debtors thus reserve all rights to recharacterize, reclassify, recategorize, or redesignate items reported in the Schedules and Statements at a later time as is necessary and appropriate.

(c) **Classifications.** Listing (i) a claim on Schedule D as "secured," (ii) a claim on Schedule E/F as "priority" or "unsecured," or (iii) a contract on Schedule G as "executory" or "unexpired" does not constitute an admission by the Debtors of the legal rights of the claimant or contract counterparty, or a waiver of the Debtors' rights to recharacterize or reclassify such claim or contract.

(d) **Claims Description.** Any failure to designate a claim on a given Debtor's Schedules and Statements as "disputed," "contingent," or "unliquidated" does not constitute an admission by the Debtor that such amount is not "disputed," "contingent," or "unliquidated." The Debtors reserve all rights to dispute, or assert offsets or defenses to, any claim reflected on their respective Schedules and Statements on any grounds, including, without limitation, liability or classification, or to otherwise subsequently designate such claims as "disputed," "contingent," or "unliquidated" or object to the extent, validity, enforceability, priority, or avoidability of any claim. Moreover, listing a claim does not constitute an admission of liability by the Debtor against which the claim is listed or by any of the Debtors. The Debtors reserve all rights to amend their Schedules and Statements as necessary and appropriate, including, but not limited to, with respect to claim description and designation.

(e) **Estimates and Assumptions.** The preparation of the Schedules and Statements required the Debtors to make reasonable estimates and assumptions with respect to the reported amounts of assets and liabilities, the amount of contingent assets and contingent liabilities on the date of the Schedules and Statements, and the reported amounts of revenues and expenses during the applicable reporting periods. Actual results could differ from such estimates.

(f) **Causes of Action.** Despite reasonable efforts, the Debtors may not have identified and/or set forth all of their causes of action (filed or potential) against third parties as assets in their Schedules and Statements, including, without limitation, avoidance actions arising under chapter 5 of the Bankruptcy Code and actions under other relevant bankruptcy and non-bankruptcy laws to recover assets. The Debtors reserve all rights with respect to any causes of action, and nothing in these Global Notes or the Schedules and Statements should be construed as a waiver of any such causes of action.

(g) **Intellectual Property Rights.** Exclusion of certain intellectual property should not be construed to be an admission that such intellectual property rights have been

abandoned, have been terminated or otherwise expired by their terms, or have been assigned or otherwise transferred pursuant to a sale, acquisition, or other transaction. Conversely, inclusion of certain intellectual property should not be construed to be an admission that such intellectual property rights have not been abandoned, have not been terminated or otherwise expired by their terms, or have not been assigned or otherwise transferred pursuant to a sale, acquisition, or other transaction.

(h)     **Insiders.**   In the circumstance where the Schedules and Statements require information regarding "insiders" the Debtors have included information with respect to the individuals who the Debtors believe are included in the definition of "insider" set forth in section 101(31) of the Bankruptcy Code during the relevant time periods.  Such individuals may no longer serve in such capacities.  In the interest of additional disclosure, the Debtors have also included certain individuals who may have officer titles in their responses to Statements, Part 13, Question 28.

The listing of a party as an insider for purposes of the Schedules and Statements is not intended to be, nor should it be, construed an admission of any fact, right, claim, or defense, and all such rights, claims, and defenses are hereby expressly reserved. Information regarding the individuals listed as insiders in the Schedules and Statements has been included for informational purposes only and such information may not be used for the purposes of determining control of the Debtors, the extent to which any individual exercised management responsibilities or functions, corporate decision-making authority over the Debtors, or whether such individual could successfully argue that he or she is not an insider under applicable law, including the Bankruptcy Code and federal securities laws, or with respect to any theories of liability or any other purpose.

4.     **Methodology.**

(a)     **Basis of Presentation.**   The Schedules and Statements do not purport to represent financial statements prepared in accordance with Generally Accepted Accounting Principles in the United States ("GAAP"), nor are they intended to be fully reconciled to the financial statements of each Debtor.   The Schedules and Statements contain unaudited information that is subject to further review and potential adjustment.   The Schedules and Statements reflect the Debtors' reasonable efforts to report the assets and liabilities of each Debtor on an unconsolidated basis.

(b)     **Confidential Information.**   There may be instances in the Schedules and Statements where the Debtors deemed it necessary and appropriate to redact from the public record information such as names, addresses, or amounts.  Typically, the Debtors have used this approach because of an agreement between the Debtors and a third party, concerns of confidentiality and protection of sensitive commercial information (*e.g.*, names of customers), or concerns for the privacy of an individual.

(c)     **Duplication.** Certain of the Debtors' assets, liabilities, and prepetition payments may properly be disclosed in response to multiple parts of the Statements and Schedules. To the extent these disclosures would be duplicative, the Debtors have determined to only list such assets, liabilities and prepetition payments once.

(d)     **Net Book Value.** In certain instances, current market valuations for individual items of property and other assets are neither maintained by, nor readily available to, the Debtors. Accordingly, unless otherwise indicated, the Debtors' Schedules and Statements reflect net book values as of January 15, 2019. Market values may vary, at certain times materially, from net book values. The Debtors believe that it would be an inefficient use of estate assets for the Debtors to obtain the current market values of their property. Accordingly, the Debtors have indicated in the Schedules and Statements that the values of certain assets and liabilities are undetermined. Also, assets that have been fully depreciated or that were expensed for accounting purposes either do not appear in these Schedules and Statements or are listed with a zero-dollar value, as such assets have no net book value. The omission of an asset from the Schedules and Statements does not constitute a representation regarding the ownership of such asset, and any such omission does not constitute a waiver of any rights of the Debtors with respect to such asset.

(e)     **Property and Equipment.** Unless otherwise indicated, owned property and equipment are valued at net book value. The Debtors may lease furniture, fixtures, and equipment from certain third-party lessors. To the extent possible, any such leases are listed in the Schedules and Statements. Nothing in the Schedules and Statements is, or should be construed as, an admission as to the determination of the legal status of any lease (including whether any lease is a true lease or a financing arrangement), and the Debtors reserve all rights with respect thereto.

(f)     **Allocation of Liabilities.** The Debtors allocated liabilities between the prepetition and postpetition periods based on the information and research conducted in connection with the preparation of the Schedules and Statements. As additional information becomes available and further research is conducted, the allocation of liabilities between the prepetition and postpetition periods may change.

(g)     **Undetermined Amounts.** The description of an amount as "undetermined" is not intended to reflect upon the materiality of such amount.

(h)     **Unliquidated Amounts.** Amounts that could not be fairly quantified by the Debtors are scheduled as "unliquidated."

(i)     **Totals.** All totals that are included in the Schedules and Statements represent totals of all known amounts. To the extent there are unknown or undetermined amounts, the actual total may be different than the listed total.

(j)     **Paid Claims.** The Debtors have authority to pay certain outstanding prepetition payables pursuant to bankruptcy or other court order; as such, outstanding liabilities may have been reduced by any court-approved postpetition payments made on

prepetition payables. Where and to the extent these liabilities have been satisfied, they are not listed in the Schedules and Statements with the exception that liabilities with respect to the Debtors' prepetition vendors may be listed at the amount outstanding as of the Petition Date, regardless of whether such claims have been settled and paid postpetition in accordance with the *Order (I) Authorizing the Debtors to Pay Prepetition Claims of Lien Claimants, Import Claimants, and 503(B)(9) Claimants, (II) Confirming Administrative Expense Priority of Outstanding Orders, and (III) Granting Related Relief* [Docket No. 74] (the "Lien Claimants Order"). To the extent the Debtors later pay any amount of the claims listed in the Schedules and Statements pursuant to any orders entered by the Bankruptcy Court, the Debtors reserve all rights to amend or supplement the Schedules and Statements or to take other action, such as filing claims objections, as is necessary and appropriate to avoid overpayment or duplicate payments for liabilities. Nothing contained herein should be deemed to alter the rights of any party in interest to contest a payment made pursuant to an order of the Bankruptcy Court where such order preserves the right to contest.

(k)     **Intercompany Claims.** Receivables and payables among the Debtors and among the Debtors and their non-Debtor affiliates are used for accounting purposes only and are never settled in cash. Furthermore, as these claims net to zero on a consolidated basis, they are not included in the Statements and Schedules.

(l)     **Guarantees and Other Secondary Liability Claims.** The Debtors have exercised reasonable efforts to locate and identify guarantees in their executory contracts, unexpired leases, secured financings, and other such agreements. Where guarantees have been identified, they have been included in the relevant Schedules G and H for the affected Debtor or Debtors. The Debtors may have inadvertently omitted guarantees embedded in their contractual agreements and may identify additional guarantees as they continue their review of their books and records and contractual agreements. The Debtors reserve their rights, but are not required, to amend the Schedules and Statements if additional guarantees are identified.

(m)     **Excluded Assets and Liabilities.** The Debtors have excluded the following categories of assets and liabilities from the Schedules and Statements: certain deferred charges, accounts, or reserves recorded only for purposes of complying with the requirements of GAAP; deferred tax assets and liabilities; goodwill and other intangibles; deferred revenue accounts; and certain accrued liabilities including, but not limited to, accrued salaries and employee benefits. Other immaterial assets and liabilities may also have been excluded.

(n)     **Liens.** The inventories, property and equipment listed in the Schedules and Statements are presented without consideration of any liens.

(o)     **Currency.** Unless otherwise indicated, all amounts are reflected in U.S. dollars.

(p)     **Setoffs.** The Debtors routinely incur setoffs and net payments in the ordinary course of business. Such setoffs and nettings may occur due to a variety of

transactions or disputes including, but not limited to, intercompany transactions, counterparty settlements, pricing discrepancies, rebates, returns, warranties, refunds, and negotiations and/or disputes between Debtors and their customers and/or suppliers.  These normal, ordinary course setoffs and nettings are common to the retail industry.  Due to the voluminous nature of setoffs and nettings, it would be unduly burdensome and costly for the Debtors to list each such transaction. Therefore, although such setoffs and other similar rights may have been accounted for when scheduling certain amounts, these ordinary course setoffs are not independently accounted for, and as such, are or may be excluded from the Debtors' Schedules and Statements.  In addition, some amounts listed in the Schedules and Statements may have been affected by setoffs or nettings by third parties of which the Debtors are not yet aware.  The Debtors reserve all rights to challenge any setoff and/or recoupment rights that may be asserted.

5.  **Specific Schedules Disclosures.**

(a)  **Schedule A/B, Part 1, Question 4.** The Debtors consider credit card A/R as a "cash equivalent" and such amounts are listed in Schedule A/B, Part 1, Question 4 rather than A/B Part 3, Question 11.

(b)  **Schedule A/B, Parts 1 and 2 – Cash and Cash Equivalents; Deposits and Prepayments.**  Details with respect to the Debtors' cash management system and bank accounts are provided in the *Debtors' Motion for Entry of a Final Order (I) Authorizing the Debtors to (A) Continue to Operate their Cash Management System, (B) Honor Certain Prepetition Obligations Related Thereto, (C) Maintain Existing Business Forms, and (D) Perform Intercompany Transactions, and (II) Granting Related Relief* [Docket No. 18] (the "Cash Management Motion") and any orders of the Bankruptcy Court granting the Cash Management Motion.

As described in the Cash Management Motion, the Debtors have 285 non-consolidated store-level deposit accounts, all of which are swept daily to a zero balance. For purposes of the Schedules and Statements, therefore, the Debtors have listed such balances at the amount as of January 15, 2019.

Additionally, the Bankruptcy Court, pursuant to the *Order (I) Approving the Debtors' Proposed Adequate Assurance of Payment for Future Utility Services, (II) Prohibiting Utility Companies from Altering, Refusing, or Discontinuing Services,(III) Approving the Debtors' Proposed Procedures for Resolving Additional Assurance Requests, and (IV) Granting Related Relief* [Docket No. 71], has authorized the debtors to provide adequate assurance of payment for future utility services, including an initial deposit in the aggregate amount of $1.29 million.  Such deposits are not listed on Schedule A/B, Part 2, which has been prepared as of the Petition Date.

(c)  **Schedule A/B, Part 3, Question 11.** No doubtful or uncollectible amounts are listed in either Question 11a or 11b. The Debtors' accounting practice is to list the

full value of the receivable and write that amount off to the extent it becomes uncollectable.

(d)  **Schedule A/B, Part 4 – Investments; Non-Publicly Traded Stock and Interests in Incorporated and Unincorporated Businesses, including any Interest in an LLC, Partnership, or Joint Venture.**  Ownership interests in subsidiaries, partnerships, and joint ventures have been listed in Schedule A/B, Part 4, as undetermined amounts on account of the fact that the fair market value of such ownership is dependent on numerous variables and factors, and may differ significantly from their net book value.

(e)  **Schedule A/B, Part 7 – Office Furniture, Fixtures, and Equipment; and Collectibles.**  Dollar amounts are presented net of accumulated depreciation and other adjustments.

(f)  **Schedule A/B, Part 11 – All Other Assets.**  Dollar amounts are presented net of impairments and other adjustments.

Additionally, the Debtors may receive refunds for sales and use tax at various times throughout their fiscal year.  As of the Petition Date, however, certain of these amounts are unknown to the Debtors, and accordingly, may not be listed in Schedule A/B.

***Other Contingent and Unliquidated Claims or Causes of Action of Every Nature, including Counterclaims of the Debtor and Rights to Setoff Claims.***  In the ordinary course of their businesses, the Debtors may have accrued, or may subsequently accrue, certain rights to counter-claims, cross-claims, setoffs, refunds with their customers and suppliers, or potential warranty claims against their suppliers.  Additionally, certain of the Debtors may be party to pending litigation in which the Debtors have asserted, or may assert, claims as a plaintiff or counter-claims and/or cross-claims as a defendant.  Because certain of these claims are unknown to the Debtors and not quantifiable as of the Petition Date, they may not be listed on Schedule A/B, Part 11.

***Interests in Insurance Policies or Annuities.***  A list of the Debtors' insurance policies and related information is available in the *Debtors' Motion for Entry of an Order (I) Authorizing the Debtors to (A) Continue and Renew their Liability, Property, Casualty, and Other Insurance Policies and Honor all Obligations in Respect Thereof, (B) Continue and Renew their Prepetition Insurance Premium Financing Agreements, and (C) Continue the Surety Bond Programs, and (II) Granting Related Relief* [Docket No. 13].  The Debtors believe that there is little or no cash value to the vast majority of such insurance policies.  To the extent an insurance policy is determined to have value, it will be included in Schedule A/B.

***Executory Contracts and Unexpired Leases.***  Because of the large number of the Debtors' executory contracts and unexpired leases, as well as the size and scope of

such documents, the Debtors have not attached such agreements to Schedule A/B. Instead, the Debtors have only listed such agreements in Schedule G.

(g)   **Schedule A/B, Part 11, Question 72**. The amounts listed reflect a tax effective rate that is an estimate for the go-forward used NOLs and tax refunds assuming a change in control.

(h)   **Schedule D – Creditors Who Have Claims Secured by Property.**  Except as otherwise agreed pursuant to a stipulation or order entered by the Bankruptcy Court, the Debtors reserve their rights to dispute or challenge the validity, perfection, or immunity from avoidance of any lien purported to be granted or perfected in any specific asset to a secured creditor listed on Schedule D.  Moreover, although the Debtors have scheduled claims of various creditors as secured claims, the Debtors reserve all rights to dispute or challenge the secured nature of any such creditor's claim or the characterization of the structure of any such transaction or any document or instrument related to such creditor's claim.

The descriptions provided in Schedule D are intended only to be a summary. Reference to the applicable agreements and other related relevant documents is necessary for a complete description of the collateral and the nature, extent, and priority of any liens.  In certain instances, a Debtor may be a co-obligor, co-mortgagor, or guarantor with respect to scheduled claims of other Debtors, and no claim set forth on Schedule D of any Debtor is intended to acknowledge claims of creditors that are otherwise satisfied or discharged by other entities.

The Debtors have not included on Schedule D parties that may believe their claims are secured through setoff rights or inchoate statutory lien rights.  Although there are multiple parties that hold a portion of the debt included in the secured facilities, only the administrative agents have been listed for purposes of Schedule D.

Additionally, the treatment of certain secured creditors' claims listed in Schedule D are subject to the payment priority set forth in that certain Third Amended and Restated Loan and Security Agreement, dated as of February 7, 2012 (as amended by that certain Ratification and Amendment Agreement, dated as of January 16, 2019, and as further amended, restated, supplemented, or otherwise modified from time to time).

(i)   **Schedule E/F – Creditors Who Have Unsecured Claims.**

***Part 1 - Creditors with Priority Unsecured Claims.***  Pursuant to the *Order (I) Authorizing the Payment of Certain Prepetition and Postpetition Taxes and Fees and (II) Granting Related Relief* [Docket No. 68] (the "Taxes Order"), the Debtors have been granted the authority to pay, in their discretion, certain tax liabilities that accrued prepetition. Accordingly, any unsecured priority claims based upon prepetition tax accruals that have been paid pursuant to the Taxes Order are not listed in Schedule E.

Moreover, in lieu of listing all of the Debtors' possible taxing authorities for notice purposes in Schedule E/F—a list that numbers in the thousands—the Debtors have only listed those taxing authorities with which the Debtors have pending audits.

(j)     Furthermore, pursuant to the *Order (I) Authorizing the Debtors to (A) Pay Prepetition Wages, Salaries, Other Compensation, and Reimbursable Expenses, and (B) Continue Employee Benefits Programs and (II) Granting Related Relief* [Docket No. 98] (the "Wages Order") the Debtors received final authority to pay certain prepetition obligations, including to pay employee wages and other employee benefits, in the ordinary course of business. The Debtors have not listed on Schedule E/F any wage or wage-related obligations for which the Debtors have been granted authority to pay pursuant to the Employee Wage Order or other order that may be entered by the Bankruptcy Court.  The Debtors believe that any non-insider employee claims for prepetition amounts related to ongoing payroll and benefits, whether allowable as a priority or nonpriority claim, have been or will be satisfied, and such satisfied amounts are not listed.

The listing of a claim on Schedule E/F, Part 1, does not constitute an admission by the Debtors that such claim or any portion thereof is entitled to priority status.

***Part 2 - Creditors with Nonpriority Unsecured Claims.***  The liabilities identified in Schedule E/F, Part 2, are derived from the Debtors' books and records.  The Debtors made a reasonable attempt to set forth their unsecured obligations, although the actual amount of claims against the Debtors may vary from those liabilities represented on Schedule E/F, Part 2.  The listed liabilities may not reflect the correct amount of any unsecured creditor's allowed claims or the correct amount of all unsecured claims.

The Debtors generally allocate individual liabilities to particular Debtors.  However, in certain cases, it would be a time-consuming and inefficient use of estate resources, or impracticable, to assign a given liability to a particular Debtor based on a contractual obligation.  Instead, the Schedules reflect the liability based on the Debtors books and records.

Schedule E/F, Part 2, contains information regarding certain compensation-related claims of insiders of the Debtors, with such claims being listed as both "contingent" and "unliquidated."  In scheduling such claims, the Debtors make no representation or assertion as to the validity of such claims, and the Debtors reserve all rights, claims, and defenses in connection therewith.

Schedule E/F, Part 2, contains information regarding threatened or pending litigation involving the Debtors.  The amounts for these potential claims are listed as "undetermined" and are marked as contingent, unliquidated, and disputed in the Schedules and Statements.  For the avoidance of doubt, demand letters received from potential litigants as a result of alleged injuries sustained at one of the Debtors' stores that do not list a specific Debtor are listed on Debtor Specialty Retail Shops

Holding Corp.'s ("Specialty Retail") Schedules as Specialty Retail is the signatory to all store leases.

Schedule E/F, Part 2, reflects certain prepetition amounts owing to counterparties to executory contracts and unexpired leases. Such prepetition amounts, however, may be paid in connection with the assumption or assumption and assignment of an executory contract or unexpired lease. In addition, Schedule E/F, Part 2, does not include claims that may arise in connection with the rejection of any executory contracts and unexpired leases, if any, that may be or have been rejected.

In many cases, the claims listed on Schedule E/F, Part 2, arose, accrued, or were incurred on various dates or on a date or dates that are unknown to the Debtors or are subject to dispute. Where the determination of the date on which a claim arose, accrued, or was incurred would be unduly burdensome and costly to the Debtors' estates, the Debtors have not listed a specific date or dates for such claim.

As of the time of filing of the Schedules and Statements, the Debtors had not received all invoices for payables, expenses, and other liabilities that may have accrued prior to the Petition Date. Accordingly, the information contained in Schedules D and E/F may be incomplete. The Debtors reserve their rights, but undertake no obligations, to amend Schedules D and E/F if and as they receive such invoices.

(k)  **Schedule G – Executory Contracts and Unexpired Leases.** While reasonable efforts have been made to ensure the accuracy of Schedule G, inadvertent errors or omissions may have occurred. Additionally, relationships between the Debtors and its customers are often governed by a master services agreement, under which customers also place work and purchase orders, which may be considered executory contracts. Disclosure of all of these purchase and work orders, however, is impracticable and unduly burdensome. Accordingly, to the extent the Debtors have determined to disclose master services agreements in Schedule G, purchase and work orders placed thereunder may have been omitted.

Listing a contract or agreement on Schedule G does not constitute an admission that such contract or agreement is an executory contract or unexpired lease or that such contract or agreement was in effect on the Petition Date or is valid or enforceable. The Debtors hereby reserve all of their rights to dispute the validity, status, or enforceability of any contracts, agreements, or leases set forth in Schedule G and to amend or supplement such Schedule as necessary. Certain of the leases and contracts listed on Schedule G may contain renewal options, guarantees of payment, indemnifications, options to purchase, rights of first refusal and other miscellaneous rights. Such rights, powers, duties and obligations are not set forth separately on Schedule G. In addition, the Debtors may have entered into various other types of agreements in the ordinary course of their business, such as supplemental agreements and letter agreement, which documents may not be set forth in Schedule G.

The Debtors reserve all rights to dispute or challenge the characterization of any transaction or any document or instrument related to a creditor's claim.

In some cases, the same supplier or provider may appear multiple times in Schedule G. Multiple listings, if any, reflect distinct agreements between the applicable Debtor and such supplier or provider.

The listing of any contract on Schedule G does not constitute an admission by the Debtors as to the validity of any such contract. The Debtors reserve the right to dispute the effectiveness of any such contract listed on Schedule G or to amend Schedule G at any time to remove any contract.

Omission of a contract or agreement from Schedule G does not constitute an admission that such omitted contract or agreement is not an executory contract or unexpired lease. The Debtors' rights under the Bankruptcy Code with respect to any such omitted contracts or agreements are not impaired by the omission. Certain Debtors are guarantors and parties to guaranty agreements regarding the Debtors' prepetition credit facility. The guaranty obligations arising under these agreements are reflected on Schedules D and F only.

(l)     **Schedule H – Co-Debtors.**  For purposes of Schedule H, only the agent under the prepetition credit facility or counterparties that are subject to a guaranty are listed as Co-Debtors on Schedule H. The Debtors have not listed any litigation-related Co-Debtors on Schedule H. Instead, all such listings can be found on the Debtors' Schedule E/F.

6.     **Specific Statements Disclosures.**

(a)     To the extent: (i) a person qualified as an "insider" in the year prior to the Petition Date, but later resigned their insider status or (ii) did not begin the year as an insider, but later became an insider, the Debtors have only listed those payments made while such person was defined as an insider in Statements, Part 2, Question 4.

(b)     **Statements, Part 2, Question 6 – Setoffs.**  For a discussion of setoffs and nettings incurred by the Debtors, refer to paragraph 4(p) of these Global Notes.

(c)     **Statements, Part 5, Question 10 – Certain Losses.**  Given the scale of the Debtors' store footprint, certain losses, including those losses attributable to theft, are unable to be tracked by the Debtors with complete accuracy, and accordingly, such losses have not been listed on the Debtors' Statements. Additionally, the Debtors only account for general recoveries of such losses, with this general amount being the recovery listed in the Statements for the 1 year immediately before the Petition Date.

(d)     **Statements, Part 6, Question 11 – Payments Related to Bankruptcy.**  The attachment to Question 11 on all Statements reflect payments to professionals on behalf of the Debtors on a consolidated basis. The Debtors believe that it would be

an inefficient use of the assets of the Debtors' estates for the Debtors to allocate these payments on a Debtor-by-Debtor basis.

(e)   **Statements, Part 6, Question 13 – Transfers not Already Listed on Statements.** In the ordinary course of their business, the Debtors often close or remodel store locations, and in the process of doing so, may give away certain fixtures possessing little to no economic value. Given the frequency of such gifts and the difficulty in accounting for them, the Debtors have not listed such transfers in their Statements.

(f)   **Statements, Part 11, Question 21 – Property Held for Another.** The Debtors are obligated under various agreements and programs to remit certain funds held for third parties to those parties, and have received authorization to do so under both the Lien Claimants Order and Wages Order. To the extent that any of the funds described above are held or paid for the benefit of third parties, such funds may not constitute property of the Debtors' estates, and the Debtors therefore have not included such amounts in their responses to Statement Question 21. The Debtors further reserve all rights they have as to whether any such funds constitute property of the estate.

(g)   **Statements, Part 7, Question 14 – Prior Locations.** The Debtors operate a national enterprise with locations throughout the U.S. The Debtors have not disclosed the addresses of all of these locations. Rather, the address of each Debtor's main center of operations or headquarters was included in the Debtors' Voluntary Petitions. For most of these locations, the dates of occupancy are not readily available.

(h)   **Statements, Part 12, Questions 22-24 – Details About Environmental Information.** The Debtors have endeavored to disclose all applicable information in response to Statements, Part 12, Questions 22–24.

(i)   **Statements, Part 13, Question 26 – Books, Records, and Financial Statements.** The Debtors provide certain parties, such as banks, auditors, potential investors, vendors, and financial advisors, with financial statements that may not be part of a public filing. The Debtors do not maintain complete lists or other records tracking such disclosures. Therefore, the Debtors have not provided full lists of these parties in their Responses to Statement Question 26.

(j)   **Statements, Part 13, Question 28 – Current Partners, Officers, Directors, and Shareholders.** The Debtors incorporate by reference the *List of Equity Security Holders* filed as part of their Voluntary Petitions.

(k)   **Statements, Part 13, Question 30 – Payments, Distributions, or Withdrawals Credited or Given to Insiders.** Distributions by the Debtors to their directors and officers are listed on the attachment to Question 4. Certain directors and executive officers of Shopko are also directors and executive officers of certain of Shopko's Debtor and non-Debtor affiliates. To the extent payments to such individuals are not listed in the response to Question 4 on the Statements for such Debtor affiliates,

they did not receive payment for their services as directors or executive officers of these entities.  Certain of the Debtors' directors and executive officers received distributions net of tax withholdings in the year preceding the Petition Date.  The amounts listed under Question 4 reflect the gross amounts paid to such directors and executive officers, rather than the net amounts after deducting for tax withholdings.

*      *      *      *      *

**Fill in this information to identify the case:**

Debtor name  **Penn-Daniels, LLC**

United States Bankruptcy Court for the:   DISTRICT OF NEBRASKA

Case number (if known)   **19-80066**

☐ Check if this is an
amended filing

Official Form 206Sum

# Summary of Assets and Liabilities for Non-Individuals

**12/15**

| Part 1: | Summary of Assets |
| --- | --- |

1. ***Schedule A/B: Assets-Real and Personal Property*** (Official Form 206A/B)

    1a. **Real property:**
Copy line 88 from *Schedule A/B*.................................................................................. $ **303,707.00**

    1b. **Total personal property:**
Copy line 91A from *Schedule A/B*.............................................................................. $ **9,600,249.82**

    1c. **Total of all property:**
Copy line 92 from *Schedule A/B*................................................................................. $ **9,903,956.82**

| Part 2: | Summary of Liabilities |
| --- | --- |

2. ***Schedule D: Creditors Who Have Claims Secured by Property*** (Official Form 206D)
Copy the total dollar amount listed in Column A, *Amount of claim,* from line 3 of *Schedule D*.................... $ **401,467,122.50**

3. ***Schedule E/F: Creditors Who Have Unsecured Claims*** (Official Form 206E/F)

    3a. **Total claim amounts of priority unsecured claims:**
Copy the total claims from Part 1 from line 5a of *Schedule E/F*............................................ $ **0.00**

    3b. **Total amount of claims of nonpriority amount of unsecured claims:**
Copy the total of the amount of claims from Part 2 from line 5b of *Schedule E/F*................................ +$ **19,458.67**

4. Total liabilities ...........................................................................................
Lines 2 + 3a + 3b
$ **401,486,581.17**

**Fill in this information to identify the case:**

Debtor name    **Penn-Daniels, LLC**

United States Bankruptcy Court for the:    DISTRICT OF NEBRASKA

Case number (if known)    **19-80066**

☐ Check if this is an amended filing

## Official Form 206A/B
## Schedule A/B: Assets - Real and Personal Property                          12/15

Disclose all property, real and personal, which the debtor owns or in which the debtor has any other legal, equitable, or future interest. Include all property in which the debtor holds rights and powers exercisable for the debtor's own benefit. Also include assets and properties which have no book value, such as fully depreciated assets or assets that were not capitalized. In Schedule A/B, list any executory contracts or unexpired leases. Also list them on *Schedule G: Executory Contracts and Unexpired Leases* (Official Form 206G).

Be as complete and accurate as possible. If more space is needed, attach a separate sheet to this form. At the top of any pages added, write the debtor's name and case number (if known). Also identify the form and line number to which the additional information applies. If an additional sheet is attached, include the amounts from the attachment in the total for the pertinent part.

For Part 1 through Part 11, list each asset under the appropriate category or attach separate supporting schedules, such as a fixed asset schedule or depreciation schedule, that gives the details for each asset in a particular category. List each asset only once. In valuing the debtor's interest, do not deduct the value of secured claims. See the instructions to understand the terms used in this form.

**Part 1:      Cash and cash equivalents**

1. **Does the debtor have any cash or cash equivalents?**

☐ No.  Go to Part 2.
■ Yes Fill in the information below.

| All cash or cash equivalents owned or controlled by the debtor | Current value of debtor's interest |
|---|---|
| 2.      **Cash on hand** | **$42,000.00** |

3.     **Checking, savings, money market, or financial brokerage accounts** *(Identify all)*
Name of institution (bank or brokerage firm)              Type of account              Last 4 digits of account number

4.     **Other cash equivalents** *(Identify all)*

5.     **Total of Part 1.**
Add lines 2 through 4 (including amounts on any additional sheets). Copy the total to line 80.                          $42,000.00

**Part 2:      Deposits and Prepayments**

6. **Does the debtor have any deposits or prepayments?**

☐ No.  Go to Part 3.
■ Yes Fill in the information below.

7.     **Deposits, including security deposits and utility deposits**
Description, including name of holder of deposit

8.     **Prepayments, including prepayments on executory contracts, leases, insurance, taxes, and rent**
Description, including name of holder of prepayment

| 8.1. | **Illinois Lottery** | $27,254.96 |
|---|---|---|

| 8.2. | **Iowa Lottery** | $11,247.47 |
|---|---|---|

| Debtor | **Penn-Daniels, LLC** | Case number *(If known)* **19-80066** |
|---|---|---|
| | Name | |

9. **Total of Part 2.**

Add lines 7 through 8. Copy the total to line 81.

| | $38,502.43 |
|---|---|

| Part 3: | Accounts receivable |

10. **Does the debtor have any accounts receivable?**

■ No.  Go to Part 4.
☐ Yes Fill in the information below.

| Part 4: | Investments |

13. **Does the debtor own any investments?**

■ No.  Go to Part 5.
☐ Yes Fill in the information below.

| Part 5: | Inventory, excluding agriculture assets |

18. **Does the debtor own any inventory (excluding agriculture assets)?**

☐ No.  Go to Part 6.
■ Yes Fill in the information below.

| | General description | Date of the last physical inventory | Net book value of debtor's interest (Where available) | Valuation method used for current value | Current value of debtor's interest |
|---|---|---|---|---|---|
| 19. | Raw materials **See Attached Schedule A/B Part 5 Questions 19-26** | | $8,851,109.59 | LIFO | $8,599,521.34 |

20. **Work in progress**

21. **Finished goods, including goods held for resale**

22. **Other inventory or supplies**

23. **Total of Part 5.**

Add lines 19 through 22.  Copy the total to line 84.

| | $8,599,521.34 |
|---|---|

24. **Is any of the property listed in Part 5 perishable?**
☐ No
■ Yes

25. **Has any of the property listed in Part 5 been purchased within 20 days before the bankruptcy was filed?**
☐ No
■ Yes. Book value    $27,282.20    Valuation method    **Average Cost**    Current Value    $27,282.20

26. **Has any of the property listed in Part 5 been appraised by a professional within the last year?**
☐ No
■ Yes

| Part 6: | Farming and fishing-related assets (other than titled motor vehicles and land) |

27. **Does the debtor own or lease any farming and fishing-related assets (other than titled motor vehicles and land)?**

■ No.  Go to Part 7.
☐ Yes Fill in the information below.

| Debtor | **Penn-Daniels, LLC** | Case number *(If known)* **19-80066** |
|---|---|---|
| | Name | |

| Part 7: | Office furniture, fixtures, and equipment; and collectibles |
|---|---|

**38. Does the debtor own or lease any office furniture, fixtures, equipment, or collectibles?**

☐ No.  Go to Part 8.
■ Yes Fill in the information below.

| General description | Net book value of debtor's interest (Where available) | Valuation method used for current value | Current value of debtor's interest |
|---|---|---|---|
| 39.  **Office furniture** | | | |
| 40.  **Office fixtures** | | | |
| 41.  **Office equipment, including all computer equipment and communication systems equipment and software** **Office Equipment, including Computers / Software / Leased Software** | $88,406.31 | Book value | $88,406.31 |
| 42.  **Collectibles** *Examples*: Antiques and figurines; paintings, prints, or other artwork; books, pictures, or other art objects; china and crystal; stamp, coin, or baseball card collections; other collections, memorabilia, or collectibles | | | |

| 43. | **Total of Part 7.** Add lines 39 through 42.  Copy the total to line 86. | $88,406.31 |
|---|---|---|

**44.  Is a depreciation schedule available for any of the property listed in Part 7?**
☐ No
■ Yes

**45.  Has any of the property listed in Part 7 been appraised by a professional within the last year?**
■ No
☐ Yes

| Part 8: | Machinery, equipment, and vehicles |
|---|---|

**46. Does the debtor own or lease any machinery, equipment, or vehicles?**

☐ No.  Go to Part 9.
■ Yes Fill in the information below.

| General description Include year, make, model, and identification numbers (i.e., VIN, HIN, or N-number) | Net book value of debtor's interest (Where available) | Valuation method used for current value | Current value of debtor's interest |
|---|---|---|---|
| 47.  **Automobiles, vans, trucks, motorcycles, trailers, and titled farm vehicles** | | | |
| 48.  **Watercraft, trailers, motors, and related accessories** *Examples*: Boats, trailers, motors, floating homes, personal watercraft, and fishing vessels | | | |
| 49.  **Aircraft and accessories** | | | |
| 50.  **Other machinery, fixtures, and equipment (excluding farm machinery and equipment)** **Store 139 Trade Fixtures / Equipment / Warehouse Equipment** | $141,781.36 | Book Value | $141,781.36 |
| **Store 140 Trade Fixtures / Equipment / Warehouse Equipment** | $96,500.92 | Book Value | $96,500.92 |

Debtor   **Penn-Daniels, LLC**                                    Case number *(If known)*  **19-80066**
         Name

| | | | |
|---|---|---|---|
| **Store 141 Trade Fixtures / Equipment / Warehouse Equipment** | $95,306.13 | Book Value | $95,306.13 |
| **Store 142 Trade Fixtures / Equipment / Warehouse Equipment** | $81,260.89 | Book Value | $81,260.89 |
| **Store 145 Trade Fixtures / Equipment / Warehouse Equipment** | $87,201.69 | Book Value | $87,201.69 |

51.    **Total of Part 8.**                                                               $502,050.99

       Add lines 47 through 50.  Copy the total to line 87.

52.    **Is a depreciation schedule available for any of the property listed in Part 8?**
       ☐ No
       ■ Yes

53.    **Has any of the property listed in Part 8 been appraised by a professional within the last year?**
       ■ No
       ☐ Yes

**Part 9:**    **Real property**

54. **Does the debtor own or lease any real property?**

    ☐ No.  Go to Part 10.
    ■ Yes Fill in the information below.

55.    **Any building, other improved real estate, or land which the debtor owns or in which the debtor has an interest**

| Description and location of property Include street address or other description such as Assessor Parcel Number (APN), and type of property (for example, acreage, factory, warehouse, apartment or office building, if available. | Nature and extent of debtor's interest in property | Net book value of debtor's interest (Where available) | Valuation method used for current value | Current value of debtor's interest |
|---|---|---|---|---|
| 55.1.  **1190 North 6th Street Monmouth , IL 61462-9672** | Owned Land | $0.00 | Listed Value | $303,707.00 |

56.    **Total of Part 9.**                                                               $303,707.00

       Add the current value on lines 55.1 through 55.6 and entries from any additional sheets.
       Copy the total to line 88.

57.    **Is a depreciation schedule available for any of the property listed in Part 9?**
       ☐ No
       ■ Yes

58.    **Has any of the property listed in Part 9 been appraised by a professional within the last year?**
       ■ No
       ☐ Yes

**Part 10:**    **Intangibles and intellectual property**

59. **Does the debtor have any interests in intangibles or intellectual property?**

Debtor   **Penn-Daniels, LLC**
Name

Case number *(If known)*  **19-80066**

☐ No.  Go to Part 11.
■ Yes Fill in the information below.

| General description | Net book value of debtor's interest (Where available) | Valuation method used for current value | Current value of debtor's interest |
|---|---|---|---|
| 60.   **Patents, copyrights, trademarks, and trade secrets** | | | |
| 61.   **Internet domain names and websites** | | | |
| 62.   **Licenses, franchises, and royalties** | | | |
| 63.   **Customer lists, mailing lists, or other compilations** **Pharmacy Customer Lists** | $0.00 | Appraisal | $329,768.75 |
| 64.   **Other intangibles, or intellectual property** | | | |
| 65.   **Goodwill** | | | |

66.   **Total of Part 10.**

Add lines 60 through 65. Copy the total to line 89.

| $329,768.75 |
|---|

67.   **Do your lists or records include personally identifiable information of customers** (as defined in 11 U.S.C.§§ 101(41A) and 107**?**
■ No
☐ Yes

68.   **Is there an amortization or other similar schedule available for any of the property listed in Part 10?**
☐ No
■ Yes

69.   **Has any of the property listed in Part 10 been appraised by a professional within the last year?**
☐ No
■ Yes

| Part 11: | **All other assets** |
|---|---|

70. **Does the debtor own any other assets that have not yet been reported on this form?**
Include all interests in executory contracts and unexpired leases not previously reported on this form.

■ No.  Go to Part 12.
☐ Yes Fill in the information below.

Debtor    **Penn-Daniels, LLC**                                    Case number *(If known)* **19-80066**
_____Name_____

| Part 12: | Summary |
| --- | --- |

**In Part 12 copy all of the totals from the earlier parts of the form**

| Type of property | Current value of personal property | Current value of real property |
| --- | --- | --- |
| 80. **Cash, cash equivalents, and financial assets.** *Copy line 5, Part 1* | $42,000.00 | |
| 81. **Deposits and prepayments.** *Copy line 9, Part 2.* | $38,502.43 | |
| 82. **Accounts receivable.** *Copy line 12, Part 3.* | $0.00 | |
| 83. **Investments.** *Copy line 17, Part 4.* | $0.00 | |
| 84. **Inventory.** *Copy line 23, Part 5.* | $8,599,521.34 | |
| 85. **Farming and fishing-related assets.** *Copy line 33, Part 6.* | $0.00 | |
| 86. **Office furniture, fixtures, and equipment; and collectibles.** *Copy line 43, Part 7.* | $88,406.31 | |
| 87. **Machinery, equipment, and vehicles.** *Copy line 51, Part 8.* | $502,050.99 | |
| 88. **Real property.** *Copy line 56, Part 9.*...............................................................> | | $303,707.00 |
| 89. **Intangibles and intellectual property.** *Copy line 66, Part 10.* | $329,768.75 | |
| 90. **All other assets.** *Copy line 78, Part 11.* | + $0.00 | |
| 91. **Total.** Add lines 80 through 90 for each column | $9,600,249.82 | + 91b. $303,707.00 |
| 92. **Total of all property on Schedule A/B.** Add lines 91a+91b=92 | | $9,903,956.82 |

In re Penn-Daniels, LLC
Case No. 19-80066 (TLS)
Schedule A/B:  Part 1, Question 2 - Cash on Hand

| Description of Property | Current Value of Debtor's Interest |
|---|---|
| Store Safe Balance - L00139 | $10,000.00 |
| Store Safe Balance - L00140 | $8,000.00 |
| Store Safe Balance - L00141 | $8,000.00 |
| Store Safe Balance - L00142 | $8,000.00 |
| Store Safe Balance - L00145 | $8,000.00 |
| TOTAL: | $42,000.00 |

Inter-Tenn-Daniels, LLC
Case No. 19-80066 (TLS)
Schedule A/B: Part 5, Questions 19-26 - Inventory , excluding agricultural assets

| Location | General Description of Property (Raw Materials, Work in Progress, Finished Goods, Other Inventory or Supplies) | Date of Last Physical Inventory | Net Book Value of Debtor's Interest | Valuation Method Used for Current Value | Current Value of Debtor's Interest |
|---|---|---|---|---|---|
| 140 - Jacksonville, IL | Finished Goods | 2/19/2018 | $1,920,157.24 | LIFO | $1,865,175.17 |
| 140 - Jacksonville, IL | Other Inventory | 2/19/2018 | $137,960.14 | LIFO | $134,009.77 |
| 139 - Quincy, IL | Finished Goods | 2/28/2018 | $1,860,930.08 | LIFO | $1,807,976.64 |
| 139 - Quincy, IL | Other Inventory | 2/28/2018 | $132,810.35 | LIFO | $129,031.18 |
| 145 - Monmouth, IL | Finished Goods | 5/21/2018 | $1,608,518.14 | LIFO | $1,562,724.39 |
| 145 - Monmouth, IL | Other Inventory | 5/21/2018 | $114,857.50 | LIFO | $111,587.56 |
| 141 - Burlington, IA | Finished Goods | 5/31/2018 | $1,456,765.13 | LIFO | $1,415,538.37 |
| 141 - Burlington, IA | Other Inventory | 5/31/2018 | $103,358.93 | LIFO | $100,433.85 |
| 142 - Fort Madison, IA | Finished Goods | 8/15/2018 | $1,415,773.89 | LIFO | $1,375,883.17 |
| 142 - Fort Madison, IA | Other Inventory | 8/15/2018 | $99,978.19 | LIFO | $97,161.21 |
| | | **TOTAL:** | **$8,851,109.59** | | **$8,599,521.34** |

**Fill in this information to identify the case:**

Debtor name  **Penn-Daniels, LLC**

United States Bankruptcy Court for the:  DISTRICT OF NEBRASKA

Case number (if known)  **19-80066**

☐ Check if this is an
amended filing

## Official Form 206D
## Schedule D: Creditors Who Have Claims Secured by Property    12/15

Be as complete and accurate as possible.

**1. Do any creditors have claims secured by debtor's property?**

☐ No. Check this box and submit page 1 of this form to the court with debtor's other schedules. Debtor has nothing else to report on this form.

☐ Yes. Fill in all of the information below.

**Part 1:    List Creditors Who Have Secured Claims**

| | |
|---|---|
| 2. **List in alphabetical order all creditors** who have secured claims. If a creditor has more than one secured claim, list the creditor separately for each claim. | |

| | | Column A | Column B |
|---|---|---|---|
| | | **Amount of claim** | **Value of collateral that supports this claim** |
| | | Do not deduct the value of collateral. | |
| 2.1 **See Attached Schedule D**<br>Creditor's Name | Describe debtor's property that is subject to a lien | **$401,467,122.50** | **Unknown** |
| Creditor's mailing address | **Describe the lien** | | |
| | **Is the creditor an insider or related party?** | | |
| Creditor's email address, if known | ■ No<br>☐ Yes<br>**Is anyone else liable on this claim?** | | |
| **Date debt was incurred** | ☐ No<br>■ Yes. Fill out *Schedule H: Codebtors* (Official Form 206H) | | |
| **Last 4 digits of account number** | | | |
| **Do multiple creditors have an interest in the same property?**<br>■ No<br>☐ Yes. Specify each creditor, including this creditor and its relative priority. | **As of the petition filing date, the claim is:**<br>Check all that apply<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | | |

| | | |
|---|---|---|
| 3. | Total of the dollar amounts from Part 1, Column A, including the amounts from the Additional Page, if any. | $401,467,122.50 |

**Part 2:    List Others to Be Notified for a Debt Already Listed in Part 1**

List in alphabetical order any others who must be notified for a debt already listed in Part 1. Examples of entities that may be listed are collection agencies, assignees of claims listed above, and attorneys for secured creditors.

If no others need to notified for the debts listed in Part 1, do not fill out or submit this page. If additional pages are needed, copy this page.

| Name and address | On which line in Part 1 did you enter the related creditor? | Last 4 digits of account number for this entity |
|---|---|---|
| | | |

In re Penn-Daniels, LLC
Case No. 19-80066 (TLS)
Schedule D:  Part 1 - Creditors Who Have Claims Secured by Property

| Creditor Name | Address1 | Address2 | City | State | Zip | Description | Insider or Related Party? | CoDebtor | Date Debt was Incurred, Description of Debtor's Property Subject to the Lien and the Nature of Lien | Contingent | Unliquidated | Disputed | Amount of Claim (Do not deduct the value of the collateral) | Value of Collateral that Supports this Claim |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Wells Fargo Bank, National Association and Spirit Realty L.P. as Agents | Attn: Portfolio Manager - Shopko | One Boston Place, Suite 1800 / 227  North Harwood St, Suite 300 | Boston  Dallas | MA  TX | 02108  75201 | Revolving and Term Loan Debt | No | Yes | 2/7/2012 & 1/16/2018 | | | | $401,467,122.50 | Unknown |
| | | | | | | | | | **TOTAL:** | | | | **$401,467,122.50** | **Unknown** |

**Fill in this information to identify the case:**

Debtor name     **Penn-Daniels, LLC**

United States Bankruptcy Court for the:     DISTRICT OF NEBRASKA

Case number (if known)     **19-80066**

☐ Check if this is an
amended filing

# Official Form 206E/F
# Schedule E/F: Creditors Who Have Unsecured Claims     12/15

Be as complete and accurate as possible. Use Part 1 for creditors with PRIORITY unsecured claims and Part 2 for creditors with NONPRIORITY unsecured claims.
List the other party to any executory contracts or unexpired leases that could result in a claim. Also list executory contracts on *Schedule A/B: Assets - Real and
Personal Property* (Official Form 206A/B) and on *Schedule G: Executory Contracts and Unexpired Leases* (Official Form 206G). Number the entries in Parts 1 and
2 in the boxes on the left. If more space is needed for Part 1 or Part 2, fill out and attach the Additional Page of that Part included in this form.

## Part 1:     List All Creditors with PRIORITY Unsecured Claims

1.  **Do any creditors have priority unsecured claims?** (See 11 U.S.C. § 507).

    ■ No. Go to Part 2.

    ☐ Yes. Go to line 2.

## Part 2:     List All Creditors with NONPRIORITY Unsecured Claims

3.  **List in alphabetical order all of the creditors with nonpriority unsecured claims.** If the debtor has more than 6 creditors with nonpriority unsecured claims, fill
    out and attach the Additional Page of Part 2.

| | | Amount of claim |
|---|---|---|
| 3.1 | Nonpriority creditor's name and mailing address<br>**See Attached Schedule E/F Part 2**<br><br>Date(s) debt was incurred _<br>Last 4 digits of account number _ | As of the petition filing date, the claim is: *Check all that apply.*<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed<br><br>Basis for the claim: _<br><br>Is the claim subject to offset? ■ No ☐ Yes | **$19,458.67** |

## Part 3:     List Others to Be Notified About Unsecured Claims

4. List in alphabetical order any others who must be notified for claims listed in Parts 1 and 2. Examples of entities that may be listed are collection agencies,
assignees of claims listed above, and attorneys for unsecured creditors.

If no others need to be notified for the debts listed in Parts 1 and 2, do not fill out or submit this page. If additional pages are needed, copy the next page.

| Name and mailing address | On which line in Part1 or Part 2 is the<br>related creditor (if any) listed? | Last 4 digits of<br>account number, if<br>any |
|---|---|---|

## Part 4:     Total Amounts of the Priority and Nonpriority Unsecured Claims

5.  Add the amounts of priority and nonpriority unsecured claims.

| | | | Total of claim amounts |
|---|---|---|---|
| **5a. Total claims from Part 1** | 5a. | $ | **0.00** |
| **5b. Total claims from Part 2** | 5b. + | $ | **19,458.67** |
| **5c. Total of Parts 1 and 2**<br>Lines 5a + 5b = 5c. | 5c. | $ | **19,458.67** |

In re Penn-Daniels, LLC
Case No. 19-80066 (TLS)
Schedule E/F: Part 2 - Creditors With Nonpriority Unsecured Claims

| Creditor Name | Address1 | Address2 | Address3 | City | State | Zip | Country | Last 4 Digits of Account Number | Date Debt was Incurred, Basis for Claim | Contingent | Unliquidated | Disputed | Claim subject to offset? | Total Claim |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| AMEREN ILLINOIS | PO BOX 88034 | | | CHICAGO | IL | 60680-1034 | | 3917 | 11/15/2018 - 12/18/2018 | | | | | $2,598.96 |
| AREA DISPOSAL SERVICES | 32289 COLLECTION CENTER DR | | | CHICAGO | IL | 60693-0322 | | | Various | | | | | $2,576.72 |
| BURLINGTON MUNICIPAL WATERWORKS,IA | P.O. BOX 786 | | | BURLINGTON | IA | 52601 | | 76-00 | 11/9/2018 - 12/8/2018 | | | | | $598.38 |
| CENTURY SIGNS, INC. | 2704 NORTH 30TH STREET | | | QUINCY | IL | 62305 | | | Various | | | | | $1,497.01 |
| CONSTELLATION NEWENERGY/4640 | PO BOX 4640 BANK OF AMERICA LOCKBOX SERVICE | | | CAROL STREAM | IL | 60197-4640 | | 1453 | 11/15/2018 - 12/18/2018 | | | | | $5,548.57 |
| CTL HYDRAULICS | 5500 FENNO ROAD | | | BETTENDORF | IA | 52722 | | | Various | | | | | $184.40 |
| JACKSONVILLE MUNICIPAL UTILITIES,IL | 200 WEST DOUGLAS WATER & SEWER, MUNICIPAL BUILDING | | | JACKSONVILLE | IL | 62650-2094 | | 3-000 | 11/21/2018 - 12/19/2018 | | | | | $258.59 |
| KBS - KELLERMEYER BERGENSONS | 1575 HENTHORNE DRIVE | | | MAUMEE | OH | 43537 | | | 01/04/19 - 01/17/19 | | | | | $3,550.87 |
| LEVEINE SANITATION | 1022 N GEAR AVENUE | | | BURLINGTON | IA | 52655 | | | Various | | | | | $330.00 |
| MECHANICAL SERVICE INC | 1144 MONMOUTH BLVD | | | GALESBURG | IL | 61402 | | | Various | | | | | $1,504.58 |
| MOHRFELD ELECTRIC INC. | 1124 AVE. H, SUITE #1 | | | FORT MADISON | IA | 52627 | | | 11/15/2018 | | | | | $189.98 |
| P.Q.L., INC. | 2285 WARD AVE | | | SIMI VALLEY | CA | 93065 | | | 1/8/2019 | | | | | $518.00 |
| SCOTT BROS. ELECTRIC LLC | 475 S. CLAY | | | JACKSONVILLE | IL | 62650 | | | 11/30/2018 | | | | | $102.61 |
| | | | | | | | | | | | | | TOTAL: | $19,458.67 |

**Fill in this information to identify the case:**

Debtor name      **Penn-Daniels, LLC**

United States Bankruptcy Court for the:    DISTRICT OF NEBRASKA

Case number (if known)    **19-80066**

☐ Check if this is an
   amended filing

## Official Form 206G
## Schedule G: Executory Contracts and Unexpired Leases                    12/15

Be as complete and accurate as possible. If more space is needed, copy and attach the additional page, number the entries consecutively.

1.  **Does the debtor have any executory contracts or unexpired leases?**
    ☐ No. Check this box and file this form with the debtor's other schedules.  There is nothing else to report on this form.
    ■ Yes. Fill in all of the information below even if the contacts of leases are listed on *Schedule A/B: Assets - Real and Personal*    *Property*
    (Official Form 206A/B).

| 2. List all contracts and unexpired leases | State the name and mailing address for all other parties with whom the debtor has an executory contract or unexpired lease |
|---|---|
| 2.1.  State what the contract or lease is for and the nature of the debtor's interest | |
| State the term remaining | |
| List the contract number of any government contract | **See Attached Schedule G** |

In re Penn-Daniels, LLC
Case No. 19-80066 (TLS)
Schedule G:  Executory Contracts and Unexpired Leases

| Contract Counterparty | Address1 | Address2 | City | State | Postal Code | Country | Description of Contract or Lease and Nature of Debtor's Interest | Date of Contract or Lease | Remaining Term | List Contract Number of Any Government Contract |
|---|---|---|---|---|---|---|---|---|---|---|
| Blessing Corporate Services | 3200 BROADWAY | | QUINCY | IL | 62301 | | Sublease | 9/19/2018 | 2/28/2019 | N/A |
| CT Corporation | P.O. Box 4349 | | Carol Stream | IL | 60197-4349 | | Statutory Representation For Service Of Process | | | |
| Custom Turf Inc. | 2819 Springlake Rd | | Quincy | IL | 62305 | | Lawn Care ST139 | | | |
| Farmers & Merchants Bank & Trust | 313 NORTH ROOSEVELT AVE | | BURLINGTON | IA | 52601 | | Sublease | 5/1/2014 | 4/30/2019 | N/A |
| Green Works Lawn and Landscape Maintenance | 211 S Fayette St | | Jacksonville | IL | 62650 | | Lawn Care ST140 | | | |
| Lozier Lawn Care | 1558 70th Street | | Monmouth | IL | 61462 | | Lawn Care ST145 | | | |
| S&S Repairs | 3328 163rd St | | Wever | IA | 52658 | | Lawn Care ST141 | | | |
| S&S Repairs | 3328 163rd St | | Wever | IA | 52658 | | Lawn Care ST142 | | | |
| SMTA Shopko Portfolio I, LLC | 1190 NORTH 6TH STREET | | MONMOUTH | IL | 61462 | | Operating Lease-Spirit | 12/15/2014 | 12/31/2031 | N/A |
| Spirit SPE Portfolio 2006-1, LLC | 1964 W. MORTON AVE. | | JACKSONVILLE | IL | 62650 | | Operating Lease-Spirit | 12/15/2014 | 12/31/2035 | N/A |
| SVK Capital, LLC | 313 NORTH ROOSEVELT AVE | | BURLINGTON | IA | 52601 | | Operating Lease | 12/11/2015 | 11/30/2029 | N/A |
| THBH SL, L.L.C. | 3200 BROADWAY | | QUINCY | IL | 62301 | | Operating Lease | 12/15/2014 | 12/31/2035 | N/A |

**Fill in this information to identify the case:**

Debtor name     **Penn-Daniels, LLC**

United States Bankruptcy Court for the:    DISTRICT OF NEBRASKA

Case number (if known)    **19-80066**

☐ Check if this is an
amended filing

Official Form 206H
# Schedule H: Your Codebtors

12/15

Be as complete and accurate as possible. If more space is needed, copy the Additional Page, numbering the entries consecutively. Attach the
Additional Page to this page.

**1. Do you have any codebtors?**

☐ No. Check this box and submit this form to the court with the debtor's other schedules. Nothing else needs to be reported on this form.

■ Yes

**2. In Column 1, list as codebtors all of the people or entities who are also liable for any debts listed by the debtor in the schedules of
creditors, Schedules D-G.** Include all guarantors and co-obligors. In Column 2, identify the creditor to whom the debt is owed and each schedule
on which the creditor is listed. If the codebtor is liable on a debt to more than one creditor, list each creditor separately in Column 2.

| Column 1: **Codebtor** | | Column 2: **Creditor** | |
| --- | --- | --- | --- |
| **Name** | **Mailing Address** | **Name** | *Check all schedules that apply:* |
| 2.1 **See Attached Schedule H** | | | ☐ D _____ <br> ☐ E/F _____ <br> ☐ G _____ |

In re Penn-Daniels, LLC
Case No. 19-80066 (TLS)
Schedule H:  Codebtors

| Name of Codebtor | Address | City | State | Zip | Name of Creditor | Applicable Schedules (D, E/F, G) |
|---|---|---|---|---|---|---|
| Pamida Stores Operating Co., LLC | 700 Pilgram Way | Green Bay | WI | 54304 | Wells Fargo Bank, National Association as Agent | D |
| Pamida Transportation, LLC | 700 Pilgram Way | Green Bay | WI | 54304 | Wells Fargo Bank, National Association as Agent | D |
| Place's Associates Expansion, LLC | 700 Pilgram Way | Green Bay | WI | 54304 | Wells Fargo Bank, National Association as Agent | D |
| Retained R/E SPE, LLC | 700 Pilgram Way | Green Bay | WI | 54304 | Wells Fargo Bank, National Association as Agent | D |
| Shopko Finance, LLC | 700 Pilgram Way | Green Bay | WI | 54304 | Wells Fargo Bank, National Association as Agent | D |
| Shopko Gift Card Co., LLC | 700 Pilgram Way | Green Bay | WI | 54304 | Wells Fargo Bank, National Association as Agent | D |
| Shopko Holding Company, LLC | 700 Pilgram Way | Green Bay | WI | 54304 | Wells Fargo Bank, National Association as Agent | D |
| Shopko Institutional Care Services Co., LLC | 700 Pilgram Way | Green Bay | WI | 54304 | Wells Fargo Bank, National Association as Agent | D |
| Shopko Optical Manufacturing, LLC | 700 Pilgram Way | Green Bay | WI | 54304 | Wells Fargo Bank, National Association as Agent | D |
| Shopko Properties, LLC | 700 Pilgram Way | Green Bay | WI | 54304 | Wells Fargo Bank, National Association as Agent | D |
| Shopko Stores Operating Co., LLC | 700 Pilgram Way | Green Bay | WI | 54304 | Wells Fargo Bank, National Association as Agent | D |
| Specialty Retail Shops Holding Corp. | 700 Pilgram Way | Green Bay | WI | 54304 | Wells Fargo Bank, National Association as Agent | D |
| SVS Trucking, LLC | 700 Pilgram Way | Green Bay | WI | 54304 | Wells Fargo Bank, National Association as Agent | D |

**Fill in this information to identify the case:**

Debtor name    **Penn-Daniels, LLC**

United States Bankruptcy Court for the:    DISTRICT OF NEBRASKA

Case number (if known)    **19-80066**

☐ Check if this is an
   amended filing

Official Form 202

# Declaration Under Penalty of Perjury for Non-Individual Debtors    12/15

An individual who is authorized to act on behalf of a non-individual debtor, such as a corporation or partnership, must sign and submit this form for the schedules of assets and liabilities, any other document that requires a declaration that is not included in the document, and any amendments of those documents. This form must state the individual's position or relationship to the debtor, the identity of the document, and the date.  Bankruptcy Rules 1008 and 9011.

WARNING -- Bankruptcy fraud is a serious crime.  Making a false statement, concealing property, or obtaining money or property by fraud in connection with a bankruptcy case can result in fines up to $500,000 or imprisonment for up to 20 years, or both.  18 U.S.C. §§ 152, 1341, 1519, and 3571.

### Declaration and signature

I am the president, another officer, or an authorized agent of the corporation; a member or an authorized agent of the partnership; or another individual serving as a representative of the debtor in this case.

I have examined the information in the documents checked below and I have a reasonable belief that the information is true and correct:

- ■ *Schedule A/B: Assets–Real and Personal Property* (Official Form 206A/B)
- ■ *Schedule D: Creditors Who Have Claims Secured by Property* (Official Form 206D)
- ■ *Schedule E/F: Creditors Who Have Unsecured Claims* (Official Form 206E/F)
- ■ *Schedule G: Executory Contracts and Unexpired Leases* (Official Form 206G)
- ■ *Schedule H: Codebtors* (Official Form 206H)
- ■ *Summary of Assets and Liabilities for Non-Individuals* (Official Form 206Sum)
- ☐ Amended *Schedule*
- ☐ *Chapter 11 or Chapter 9 Cases: List of Creditors Who Have the 20 Largest Unsecured Claims and Are Not Insiders* (Official Form 204)
- ☐ Other document that requires a declaration

I declare under penalty of perjury that the foregoing is true and correct.

Executed on    **February 22, 2019**       X */s/ Russell Steinhorst*
                                            Signature of individual signing on behalf of debtor

                                            **Russell Steinhorst**
                                            Printed name

                                            **Chief Executive Officer**
                                            Position or relationship to debtor